Filed 10/21/21  P. v. Lopez CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

|  |  |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>　　v.<br><br>ERNEST LOPEZ,<br><br>　　　Defendant and Appellant. | B307234<br><br>(Los Angeles County<br>Super. Ct. No. GA040566) |

　　　APPEAL from an order of the Superior Court of Los Angeles County, Terry Lee Smerling, Judge.  Reversed with directions.

　　　Victor J. Morse, under appointment by the Court of Appeal, for Defendant and Appellant.

　　　Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Idan Ivri and Roberta L. Davis, Deputy Attorneys General, for Plaintiff and Respondent.

————————————

Ernest Lopez challenges the trial court's denial of his petition for resentencing of his conviction for murder filed under Penal Code section 1170.95.[1]  Lopez's petition alleges his jury was instructed on the now invalid natural and probable consequences theory of murder liability, and that the trial court engaged in unauthorized factfinding before first issuing an order to show cause.

Although conceding procedural error, the Attorney General argues it was harmless because Lopez's conviction for attempted murder necessarily demonstrates the jury relied upon a direct perpetrator theory in finding him guilty of murder.  This hypothesis is contradicted by the record.

During Lopez's trial, the prosecutor explicitly invited the jury to convict him of attempted murder based on a specific intent to kill.  However, he also invited the jury to convict Lopez of murder based on a natural and probable consequences theory. The record does not indicate which theory the jury used in ultimately convicting Lopez of murder.

Accordingly, the trial court's error in denying Lopez's petition was not harmless.  The matter is reversed and remanded with instructions to issue an order to show cause for further proceedings under section 1170.95.

**FACTUAL AND PROCEDURAL SUMMARY**

A.    **The Information**

In April 2000, the People charged Lopez and codefendant Jim Valle with murder (§ 187, subd. (a); count 1), attempted

---

[1] Subsequent undesignated statutory references are to the Penal Code.

premeditated murder (§ 664, subd. (a); count 3), and deadly weapon/great bodily injury assault (§ 245, subd. (a)(1); count 4), all against the same victim, Jose Negrete. Lopez alone was charged with possessing a firearm as an ex-felon (§ 12021, subd. (a)(1); count 2). The information also alleged as to counts 1, 3, and 4, that Lopez personally used and fired a handgun inflicting great bodily injury or death (§§ 12022.5, 12022.53), and that those counts were committed for gang purposes (§ 186.22, subd (b)(1)). The information further alleged as to counts 3 and 4 that Lopez inflicted great bodily injury on the victim. (§ 12022.7, subd. (a).)

In our prior opinion involving Lopez's direct appeal (*People v. Lopez* (Dec. 14, 2001, B143476) [nonpub. opn.] [2001 WL 1613504]), we described the facts of the case, which we now summarize.

On the evening of June 19, 1999, Negrete (the victim), Heidy Camacho, and sisters Faith and Marie Rodriguez attended a birthday party at codefendant Jim Valle's parents' San Gabriel Valley home. Many other people, including Lopez, attended the party. Lopez and several other attendees were members of the Lomas street gang.

At the party, Negrete was drunk, and he and Camacho had a verbal argument and physical fight. Negrete pulled Camacho's hair. Camacho and several others then walked to a payphone in a parking lot a block away to telephone Camacho's mother. Camacho told Valle about her fight with Negrete. Valle became angry.

Negrete and the Rodriguez sisters drove up to the payphone. Negrete got out, argued briefly with Camacho, and returned to Faith's car. Valle approached the car and began

3

arguing with Negrete, objecting to Negrete's treatment of Camacho. Camacho and the Rodriguez sisters unsuccessfully tried to calm and separate Valle and Negrete. Valle threatened Negrete with a knife. Eventually, the argument became a physical fight.

Within a few minutes, several other people from the party, including Lopez and Valle's brother, arrived and began attacking Negrete, who was badly beaten. Some of the attackers shouted and displayed Lomas gang slogans during the attack. More than one of the newcomers possessed firearms.

Lopez and Valle's brother broke bottles over Negrete's head. The coroner opined that the resulting head injuries were severe and possibly life-threatening.

Negrete ended up lying inside Faith's car, with others around and inside the car, continuing the attack. At least one gunshot was fired into the car, killing Negrete. The gun was within 18 inches of Negrete when the fatal shot was fired.

When the shot was fired, Valle, Lopez, and a third man were inside or leaning into the car. After the shot, Lopez continued to hit Negrete until the car pulled away. Lopez and the other attackers fled.

Negrete was killed in a Lomas-claimed area. Lopez was a documented Lomas member, and a leader of a group of young Lomas members who actively perpetrated robberies and violent crimes.

The People's gang expert opined that Negrete was the victim of a "rat-pack" attack. In such attacks, a large group of gang members attack to demonstrate their fierceness, loyalty to the gang, and willingness to participate in crime to further the

4

gang's influence and reputation. The victims need not be rival gang members.

Valle and Lopez were tried together. Neither testified, but both presented defenses. Valle's witnesses said that although he participated in the initial attack on Negrete, he had been pulled away before the fatal shot was fired. The witnesses said Valle was not a Lomas member or associate. Valle's witnesses said Lopez attacked Negrete, and was leaning into the car when the shot was fired. Lopez presented a police detective who had interviewed several witnesses shortly after the crime. The detective presented some interview statements that were inconsistent with some of those witnesses' trial testimony.

Specifically, Faith told the officer she did not see who broke the bottles on Negrete. Marie did not say she heard Lomas gang monikers shouted during the attack, and did not identify Lopez as participating in the attack, but only as running away after the shot. The detective did not see any injuries on Lopez's hands when he was arrested. (*People v. Lopez*, *supra*, B143476 [2001 WL 1613504].)

## B.    Jury Instructions

On the attempted murder charge, Lopez's jury was instructed it must find he "harbored express malice aforethought, namely, a specific intent to kill unlawfully another human being."

On the murder charge, Lopez's jury was instructed on actual malice, direct aiding and abetting, and the natural and probable consequences doctrine. The natural and probable consequences instruction provided that the jury must find Lopez guilty of murder if it found he committed the crime of attempted

5

murder (the target offense),[2] that he aided and abetted that crime, that a coprincipal committed the crime of murder, and that the murder (the non-target offense) was a natural and probable consequence of the target crime.

## C.    Conviction and Sentencing

A jury convicted Lopez of second degree murder (§ 187, subd. (a); count 1), attempted murder (§§ 187, subd. (a), 664; count 3), and assault with a deadly weapon (§ 245, subd. (a); count 4).  All three charges pertained to Lopez's attacks on Negrete during the same incident.

As to counts 1, 3, and 4, the jury found true the enhancement allegations that the crimes were committed for the benefit of, at the direction of, or in association with a criminal street gang and with the specific intent to promote, further, or assist in criminal conduct by gang members.  (§ 186.22, subd. (b)(1).)  As to counts 1 and 3, the jury found true the enhancement allegations that a principal personally used and discharged a firearm and caused great bodily injury or death (§ 12022.53, subds. (b), (c), (d), (e)(1)), but found *not* true the enhancement allegations that Lopez personally used and discharged a firearm and caused great bodily injury or death (§§ 12022.5, subd. (a)(1), 12022.53, subds. (b), (c), (d)).  As to counts 3 and 4, the jury found true the enhancement allegations that Lopez personally inflicted great bodily injury.  (§ 12022.7, subd. (a).)

---

[2] See, e.g., *People v. Hardy* (2018) 5 Cal.5th 56, 93 (discussing target and non-target offenses for purposes of murder liability under the natural and probable consequences doctrine).

The trial court sentenced Lopez to 15 years to life imprisonment for his conviction of second degree murder in count 1, with a consecutive term of 25 years to life for the vicarious firearm enhancement thereto. No sentence was imposed for his convictions in counts 3 and 4, pursuant to section 954.

## D. Prior Appeals

Lopez appealed and, in 2001, this court affirmed his judgment of conviction, but struck the firearm enhancements. (*People v. Lopez, supra*, B143476 [2001 WL 1613504].) Our Supreme Court granted review, then transferred the cause back to this court to reconsider its holding on the enhancements in light of *People v. Garcia* (2002) 28 Cal.4th 1166, 1169, 1171-1178. In 2003, this court adopted its original opinion, except for the section striking the enhancements, and affirmed the judgment. (*People v. Lopez* (Apr. 2, 2003, B143476) [nonpub. opn.] [2003 WL 1735674].)

## E. Petition for Resentencing and the Trial Court's Denial

In 2018, the Legislature enacted Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Senate Bill 1437), which, among other revisions to the law of murder, abolished the natural and probable consequences doctrine in cases of murder. (See *People v. Gentile* (2020) 10 Cal.5th 830, 842-843.) The legislation also enacted section 1170.95, which established a procedure for vacating murder convictions for defendants who could no longer be convicted of murder because of the changes in the law and resentencing those who were so convicted. (Stats. 2018, ch. 1015, § 4.)

On March 12, 2019, Lopez filed a petition for resentencing pursuant to section 1170.95. The People filed an opposition.

Through appointed counsel, Lopez filed a reply. After a hearing, the trial court denied the petition without issuing an order to show cause.

Lopez timely appealed.

## DISCUSSION

### A.    Senate Bill 1437 and Section 1170.95

The Legislature enacted Senate Bill 1437 "to amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, §1, subd. (f); *People v. Gentile*, *supra*, 10 Cal.5th at p. 842; *People v. Martinez* (2019) 31 Cal.App.5th 719, 723.) To accomplish this objective with respect to the natural and probable consequences doctrine, Senate Bill 1437 added section 188, subdivision (a)(3), defining malice, to require that all principals to murder must act with express or implied malice to be convicted of that crime, with the exception of felony murder under section 189, subdivision (e). (Stats. 2018, ch. 1015, § 2; *Gentile*, *supra*, at pp. 842-843.) By these amendments, Senate Bill 1437 thus altogether eliminated the natural and probable consequences liability for murder. (*People v. Lewis* (2021) 11 Cal.5th 952, 957 (*Lewis*).)

Senate Bill 1437 also added section 1170.95 to provide a procedure by which persons previously convicted of murder under a natural and probable consequences theory may seek retroactive relief if they could no longer be convicted of murder because of the amendments to section 188. (*Lewis*, *supra*, 11 Cal.5th at

8

p. 957; *People v. Gentile, supra*, 10 Cal.5th at p. 843; *People v. Martinez, supra*, 31 Cal.App.5th at pp. 722-723.)

Subdivision (a) of section 1170.95 sets forth the requirements for a facially sufficient petition. The petitioner must aver that (1) the charging document "allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine"; (2) "petitioner was convicted of first degree or second degree murder"; and (3) "petitioner could not be convicted of first or second degree murder because of changes to Section 188 or 189 made effective January 1, 2019." (§ 1170.95, subd. (a); *People v. Drayton* (2020) 47 Cal.App.5th 965, 973 (*Drayton*).) Subdivision (b) of section 1179.95 in turn "describes where and how the petition must be filed and specifies its required content," including a declaration by the petitioner that he or she "is eligible for relief according to the criteria set out in subdivision (a)." (*Drayton, supra*, at p. 973.) "If a petition fails to comply with subdivision (b)(1), 'the court may deny the petition without prejudice to the filing of another petition.' (§ 1170.95, subd. (b)(2).)" (*Lewis, supra*, 11 Cal.5th at p. 960.)

If a petition for resentencing under section 1170.95 meets the requirements of subdivisions (a) and (b), the trial court "proceeds to subdivision (c) to assess whether the petitioner has made 'a prima facie showing' for relief. (§ 1170.95, subd. (c).)" (*Lewis, supra*, 11 Cal.5th at p. 960.) At this stage, the trial court must accept briefing from the parties before making its prima facie determination of eligibility. (*Lewis, supra*, at p. 970.)

With the benefit of the parties' briefing, the trial court may then consider the record of conviction, including the jury instructions, verdict form(s), and any special findings or

9

enhancement allegations the jury found true to determine if the petition makes a prima facie showing of entitlement to relief. (*Lewis*, *supra*, 11 Cal.5th at pp. 970-971; *People v. Duchine* (2021) 60 Cal.App.5th 798, 815.)

Although "[t]he record of conviction will necessarily inform the trial court's prima facie inquiry under section 1170.95, allowing the court to distinguish petitions with potential merit from those that are clearly meritless . . . , the prima facie inquiry under subdivision (c) is limited." (*Lewis*, *supra*, 11 Cal.5th at p. 971.) Thus, in conducting its prima facie review, the trial court does not engage in factfinding, but " ' "takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved. If so, the court must issue an order to show cause." ' " (*Lewis*, *supra*, at p. 971, quoting *Drayton*, *supra*, 47 Cal.App.5th at p. 978.) " 'However, if the record, including the court's own documents, "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner." ' " (*Lewis*, *supra*, at p. 971, quoting *Drayton*, *supra*, at p. 979.)

If the trial court determines that petitioner has made a prima facie showing for relief, the court must issue an order to show cause, "and then must hold a hearing 'to determine whether to vacate the murder conviction and to recall the sentence and resentence the petitioner on any remaining counts in the same manner as if the petitioner had not . . . previously been sentenced, provided that the new sentence, if any, is not greater than the initial sentence.' (§ 1170.95, subd. (d)(1).) 'The prosecutor and the petitioner may rely on the record of conviction

10

or offer new or additional evidence to meet their respective burdens.' (§ 1170.95, subd. (d)(3).) At the hearing stage, 'the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing.' (§ 1170.95, subd. (d)(3).)" (*Lewis, supra*, 11 Cal.5th at p. 960.)

## B. The Resentencing Court Erred in Denying Lopez's Petition During its Prima Facie Review

Lopez argues that the trial court engaged in unauthorized factfinding in determining whether he had made a prima facie case for section 1170.95 relief. Instead of accepting the facts as stated in his petition, Lopez says the trial court analyzed the facts as set forth in our prior opinion, and concluded he was a direct aider and abettor or that he was a major participant acting with reckless indifference to human life. Lopez concludes we must reverse and remand with directions that the trial court issue an order to show cause and hold a hearing pursuant to section 1170.95, subdivisions (c) and (d).

In his section 1170.95 petition, Lopez alleged that he was convicted of second degree murder under a natural and probable consequences theory. The jury instructions support this possibility. Nothing in the record before the resentencing court permitted it to conclusively determine that the jury did not base its verdict on the legally invalid theory of natural and probable consequences. Thus, nothing in the record of conviction indicates Lopez was *necessarily* convicted of murder based on a theory that he was the actual shooter, harbored the intent to kill, or was a major participant in the robbery and acted with reckless indifference to human life.

11

In arriving at its conclusion that our opinion, together with the trial transcripts, showed that Lopez was convicted as a direct aider and abettor or was a major participant acting with reckless indifference to human life, the resentencing court necessarily engaged in factfinding at the prima facie stage, which it was not authorized to do. (*People v. Nguyen* (2020) 53 Cal.App.5th 1154, 1165-1166; see also *Drayton*, *supra*, 47 Cal.App.5th at p. 980 [a resentencing court's decision-making authority at the prima facie stage "is limited to readily ascertainable facts from the record (such as the crime of conviction), rather than factfinding involving the weighing of evidence or the exercise of discretion"].)

## C.     The Error Was Not Harmless

Our Supreme Court's recent decision in *Lewis* held appellate courts should evaluate the prejudice of a trial court's erroneous denial of an order to show cause under the *Watson*[3] standard, under which Lopez must " 'demonstrate there is a reasonable probability that in the absence of the error he . . . would have obtained a more favorable result.' [Citations.]" (*Lewis*, *supra*, 11 Cal.5th at p. 974.)

Although the Attorney General concedes the trial court engaged in unauthorized factfinding at the prima facie stage, he argues the error was harmless under *Lewis*. Because the only theories under which the jury could convict Lopez of attempted murder were that he was the direct perpetrator, or a direct aider

---

[3] *People v. Watson* (1956) 46 Cal.2d 818.

12

and abettor, so the argument goes, Lopez necessarily harbored an intent to kill.[4]

The Attorney General observes that Lopez's attack on Negrete continued before, during, and after the shooting that killed him, and the attempted murder charge was based on the same conduct as the murder charge. He observes that defense counsel, the prosecutor, and the court agreed sections 654 and 954 applied, and rendered sentencing on the assault and attempted murder charges impermissible, because they were charged as lesser offenses to the murder.

The Attorney General concludes: "[T]he jury's guilty verdict on the attempted murder charge demonstrates it *did* find [Lopez] intended to kill the victim, which necessarily means that the murder conviction was not based on the natural and probable consequences doctrine, but on a finding of express malice."

Initially, the Attorney General's argument relies on the false premise that application of sections 654 and 954 *necessarily* implies that the jury made the same mental state finding as to both the attempted murder and murder charge. But section 654 speaks to permissible punishment, saying nothing whatsoever about what a jury necessarily finds in returning its guilty verdicts on a multi-count information.[5]

---

[4] See, e.g., *People v. Smith* (2005) 37 Cal.4th 733, 739 (attempted murder requires specific intent to kill); *People v. Lee* (2003) 31 Cal.4th 613, 624 ("the person guilty of attempted murder as an aider and abettor must intend to kill").

[5] Section 654, subdivision (a) provides, in pertinent part: "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision

13

Lopez's reply emphasizes that the attempted murder charge and murder charge were based upon different events: the attempted murder charge was based on Lopez's non-fatal beating of Negrete (when he was lying on the ground), while the murder charge was based on other evidence that an unidentified person fired at least one gunshot at Negrete, killing him (when he was in a vehicle).

Lopez's reply also highlights the prosecutor's closing arguments at trial which he offers to demonstrate that it is *not necessarily true* that the jury's verdict on the attempted murder charge implied that the jury's verdict on the murder charge was based on a direct perpetrator theory.

As set forth below, the prosecutor invited the jury to convict Lopez of attempted murder based on his specific intent to kill by personally beating Negrete over the head with beer bottles. In the same breath, however, the prosecutor also invited the jury to convict Lopez of murder as an aider and abettor because the fatal shooting of Negrete *was a natural and probable consequence of the group beating of the victim*:

"Now, would you hold them responsible because instead of those circumstances, they both participated in a gang assault, termed a rat-pack by our gang expert, that lasted three to four minutes with fists and feet and a frenzy to the point that one of the gang members was apparently up on the roof of the car or up on the hood of the car and bottles are being smashed, and they continued to punch Mr. Negrete until he was unconscious? And

that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision." Section 954 does not appear to be applicable to this argument.

14

some of the gang members had weapons, and some had knives, and one had a 9-millimeter, and the assault continued. Mr. Negrete died as a result of that assault. *Is that reasonably foreseeable? Of course it is. And, therefore, you should find the defendants guilty of the crime of murder.*" (Italics added.)

Lopez concludes that the prosecutor's closing argument invited the jurors to convict him of the attempted murder based on malice, but also to convict him of murder based on the now invalid natural and probable consequences theory of murder liability.

Mindful that "the 'prima facie bar was intentionally and correctly set very low' " (*Lewis, supra,* 11 Cal.5th at p. 972), the dispute over whether the jury convicted Lopez of murder based on the legally-invalid natural and probable consequences doctrine or, instead, based on a direct perpetrator theory, needs to be addressed by the parties following an order to show cause hearing in the trial court.

We express no opinion on Lopez's ultimate entitlement to relief.[6]

---

[6] We note that Senate Bill No. 775 (2021-2022 Reg. Sess.) which amends section 1170.95, was approved by the Governor on October 5, 2021. (Stats. 2021, ch. 551, § 2.) This legislation "clarifies existing law to include voluntary manslaughter and attempted murder convictions as eligible for relief under [Senate Bill] 1437" (Sen. Com. on Public Safety, com. on Sen. Bill No. 775 (2021-2022 Reg. Sess.)), and takes effect on January 1, 2022.

## DISPOSITION

The trial court's order is reversed, and the trial court is ordered to issue an order to show cause and conduct further proceedings under section 1170.95.

NOT TO BE PUBLISHED


CRANDALL, J.*


We concur:



ROTHSCHILD, P. J.



CHANEY, J.


---

* Judge of the San Luis Obispo County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

16